HELEN ADAMS and VICTOR HAYS ADAMS, Plaintiffs and Respondents, v. ROY EARL DAVIS, Defendant and Appellant.

No. 10540

Submitted September 9, 1963. Decided November 12, 1963.

386 P.2d 574

588

C. W. Leaphart, Jr., Helena (argued), Landoe & Gary, Bozeman, for appellant.

Drysdale & Anderson, Bozeman, Douglas R. Drysdale, Bozeman (argued), for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in favor of the plaintiffs after trial by jury, and from the court's order denying a motion for a new trial. The appeal is from the district court of the eighteenth judicial district of the State of Montana, the Honorable Lester H. Loble having been called in to preside.

The facts of the case, brought out in a well-tried case, are clear and revealing. The defendant, a man of 72 years, described as a free-wheeling, cantankerous, self-made man, drove a 1959 Cadillac into the rear part of plaintiffs' 1946 Ford Pickup truck. The collision caused enough damage to the truck that it could not be repaired satisfactorily. There is no contest by the appellant of the finding by the jury determination of its value of $550. The accident occurred on June 13, 1961, some four-tenths of a mile east of Logan, Montana. The day was warm and dry. The time of the accident was approximately 9:15 P.M., and though it was not completely dark, both automobiles had their lights on. The accident occurred on a curve, and there was a windrow of oiled gravel extending from the town of Logan east for about a half mile.

It was established at trial that at both the west and east ends of the windrow of gravel, located on the northwest side of the road, there were highway signs restricting speed in the half mile area.

The Cadillac, traveling east, collided with the rear end of plaintiffs' truck striking it just behind the cab door. Although contested by the defendant, the undeniable fact is that plaintiffs' vehicle was in the proper traffic lane, and that defendant's vehicle crossed the double yellow line into plaintiffs' lane causing the accident. The defendant's estimate of his speed at the time of collision was about 30 miles per hour while the estimate of the investigating Highway Patrolman was from 30 to 35 miles per hour. The plaintiffs' truck had either come to a complete stop at the collision or was moving very slowly for just before the accident Victor Adams, the driver of the truck, saw defendant's car coming into plaintiffs' lane of traffic and tried to avoid the collision by stopping his vehicle. The evidence also showed that defendant's car was traveling fast enough to go approximately 100 feet past the scene of the accident with a blown-out front left tire, coming to a stop in a field on the north side of the highway.

Considerable evidence was introduced as to defendant's condition at the time of the accident. Six witnesses, including the Highway Patrolman, who cited defendant for driving while intoxicated, testified defendant was under the influence of liquor. Defendant entered a plea of guilty several days after the accident to this charge in the justice court in Three Forks, Montana. In addition, defendant was wearing dark glasses, and the windshield of the Cadillac was tinted—a combination of physical factors that recommend the use of radar under like conditions.

Immediately after the accident when asked by her husband whether or not she was badly hurt she replied, "No, I don't think so", although she testified at the time of impact her knees hit the dashboard. The Highway Patrolman, who arrived at the

scene of the accident within a very few minutes after the accident, testified that when he asked the Adams if anyone was hurt that Mrs. Adams said she had hurt her knees. They went that evening to Dr. Bertagnolli in the town of Three Forks who testified that she had "bruises of both knees and side of the right side, and was complaining of pain in her back and down the back of her right leg." The injuries not being too severe he decided to wait a day or so for a complete examination. Two days later he saw her again and due to continued pain he took some ten or eleven X-rays of the lower part of her back, the lumbar area and the pelvis. He also took a history. Evidence was produced at the trial of an injury some years before to Helen Adams' tail bone and there was evidence introduced by both sides in the case to an arthritic condition in the back. The medical testimony showed an aggravation of the previous injury, amounting to a ten to twenty percent permanent partial disability, which will in all probability progress in severity. Both medical experts testified as to the presence of muscle spasm and hypesthesia. As a result of the injury Helen Adams had to quit her job with a dry cleaning establishment. Complaint alleged general damages to Helen Adams in the amount of $27,500, punitive and exemplary damages of $10,000 and $550 special damages to the car for which she had one-half interest or $275; for the plaintiff Victor Adams $10,000 exemplary and punitive damages, and $550 special damages to the car of which he had one-half interest or $275. The judgment for Helen Adams was $27,775 and for Victor Adams $275.

Appellant set forth nine specifications of error:

"1. The lower court erred in entering judgment for the plaintiffs-respondents and against the defendant-appellant, on the grounds that the verdict of the jury and the judgment was not supported by reasonable, sufficient and substantial evidence.

"2. The lower court erred in denying the defendant's mo-

tion for a new trial on the grounds of accident and surprise, which ordinary prudence could not have guarded against.

"3. The lower court erred in its failure to grant defendant a new trial on the grounds of excessive damages appearing to have been given under the influence of passion or prejudice.

"4. The lower court erred in its failure to grant a new trial on the grounds of insufficiency of the evidence to justify the verdict for personal injuries as rendered by the jury.

"5. The lower court erred for its failure to grant the defendant's motion to dismiss on the grounds and for the reason that the complaint was not verified.

"6. The lower court erred in giving Instruction No. 35.

"7. The lower court erred in giving Instruction No. 26.

"8. The lower court erred in giving Instruction No. 18.

"9. The lower court committed prejudicial error by its remarks and comments throughout the trial."

Three main issues are covered by appellant's brief:

(1)    the lack of verification of respondents complaint;

(2)    the prejudicial attitude and remarks of the trial judge; and

(3)    the excessive damages awarded by the jury.

Concerning general argument No. 1, that the complaint should have been dismissed for failure to verify same, we find no merit. The complaint was filed on February 8, 1962, some two months after the adoption by the Legislature of the Montana Rules of Civil Procedure. Here the complaint was prepared to conform to section 93-2703-5, R.C.M. 1947 (Rule 11), and the defendant made no claim that the lack of verification prejudiced him in any way or affected any substantial right of the defendant. It was not until the trial had been had and the judgment adverse to him that the question was first raised by defendant's motion to dismiss on appeal. Here, appellant's proper remedy would have been a motion to strike as provided for by section 93-2703-6(f) (Rule 12). Hav-

ing failed to do so his objection must fail. See 7 Moore's F.P., pp. 1001-1005.

Concerning the second major issue set forth by the appellant, counsel points out in his brief that while he made but one exception to remarks of the trial judge there were others made during the trial that he felt prejudiced the jury. Too, in oral argument he pointed out to this court that not only was he confronted with the remarks of the trial judge but what does not appear in the cold record was the attitude shown by the judge which in his opinion gave the jury the wrong impression of his case.

Here, we are asked to overturn the judgment because of alleged indiscretions of a trial judge during trial. A careful study has been made of all the remarks by the trial judge during the trial and it would appear to us that neither side escaped without trauma. From the trial judge's viewpoint it must be remembered that one witness, the very person raising the objection, was a trying, difficult and uncooperative witness. His conduct and attitude brought forth several judicial shots from the hip, but when considered in view of all the evidence we do not think them so prejudicial as to call for a new trial.

In viewing this objection we have carefully considered counsel's position when confronted with remarks from the bench that he deems objectionable. His is a real dilemma. While to him it appeared that the remarks from the bench might prejudice his cause it also is apparent that his witness' conduct and attitude tried the patience of both court and counsel. In view of this situation and considering all the evidence presented we do not deem the remarks of the court to have been prejudicial.

The effect of this decision is that a trial judge is charged with knowledge that his conduct as shown by the record during a trial before a jury is reviewable.

Concerning appellant's third major argument for re-

versal, the excessive damages, we find without merit. This court in a recent case, Risken v. Northern Pacific Ry. Co., 137 Mont. 57, 350 P.2d 831, considered the award of $60,000 and sustained it saying "* * * Pain and suffering day after day, discomfort every hour, worry, fear and apprehension of what the future holds in store, caused as here by the negligent acts of defendant, are difficult to evaluate in dollars. The jury heard and observed the plaintiff, and all the witnesses in this cause, and they arrived at a figure which in their mind would compensate the plaintiff. We observe no influence of passion or prejudice and the size of the verdict does not shock our conscience in view of the fact situation herein."

Such are the facts of this case. Here both parties produced extensive medical testimony, and the appellant's medical testimony confirmed much of the testimony introduced by Dr. Bertagnolli. As this court said in Jewett v. Gleason, 104 Mont. 63, 70, 65 P.2d 3, 5, quoting from Ashley v. Safeway Stores Inc., 100 Mont 312, 47 P.2d 53;

" "* * * It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it must be, in a light most favorable to the plaintiff.' "

As pointed out previously other specifications were set forth but were grouped into the three major arguments set forth by appellant. Having failed to comply with Court Rule 3 c, para. X, in not setting out "totidem verbis" instructions 35, 26, and 18, they will not be separately discussed other than to point out that all three instructions dealt with the question of punitive damages and the jury having found for the appellant, as to punitive damages, no error was made by the court.

Judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON:

594

I concur in the foregoing opinion except the statement therein as to the effect of the decision being to charge a trial judge with knowledge that his conduct during trial before a jury is reviewable. In my opinion, this decision does not establish any new principles in that respect, such has been the law for many years. See Rea v. Alfalfa Products Co., 53 Mont. 90, 161 P. 708; Pilgeram v. Haas, 118 Mont. 431, 167 P.2d 339; and Larson v. Great Falls Cty Lines, Inc., 119 Mont. 593, 178 P.2d 410.

MR. JUSTICE CASTLES:

I concur in the result, but not in all that is said.

MR. JUSTICE DOYLE:

I concur in the result, but not in all that is said.

MR. JUSTICE ADAIR, specially concurring in result.

I concur in affirming the judgment of the trial court, but I do not agree with all that is said in the above opinion in chief.

In his brief on this appeal appellant's counsel asserted that while he took but a single exception to any of the remarks made from the bench by the district judge during the course of the trial, yet there were other remarks to which no exceptions were taken, made by the presiding judge which appellant's counsel urges prejudiced the jury. However, the chief opinion on this appeal recognizes the fact that one witness whose conduct in court occasioned the remarks complained of "was a trying, difficult and uncooperative witness" whose "conduct and attitude brought forth several judicial shots from the hip" and that such "conduct and attitude tried the patience of both court and counsel."

It is quite apparent that the witness tried his "monkey shines" out in the wrong trial court, and before the wrong trial judge, and that the witness came out second best in the

encounter. It was the trial judge's duty to preside at the trial and this he did. He is an eminently, courageous, able and experienced trial judge who is not just about to surrender his seat on the bench to any "trying, difficult and uncooperative witness."